IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-------------------------------------------

King Solomon Enterprises, Inc.,  )
)
                 Plaintiff,      )
)
          v.                     )
)
United States of America, the United States  )
Department of Transportation,    )
     ELIZABETH H. DOLE, in her capacity as  )
     Secretary of Transportation, and  )
     JOHN GAUGHAN, in his capacity as  )
     Maritime Administrator,     )
)
                 Defendants.     )

-------------------------------------------

FILED

FEB 26 1987

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

Civil Action
No. 87-0278

Judge S. Sporkin

STATEMENT OF VASSILIOS M. LIVANOS

I, Vassilios M. Livanos, do hereby declare as follows:

1.    I am the president of King Solomon Enterprises, Inc. ("Enterprises"), the plaintiff in this action, and I am personally familiar with the facts and circumstances underlying the allegations of the complaint.

2.    Enterprises is a corporation in good standing, organized under the laws of Delaware for the purpose of owning, operating and/or chartering vessels for the transportation of cargoes by water.  Attached hereto as Exhibit 1 is a true and correct copy of a certificate of the Delaware Secretary of State as to the incorporation of Enterprises.  Attached as Exhibit 2 is a true and correct copy of the By-Laws of Enterprises as in effect on the date hereof.

3.   The following persons constitute all of the directors and officers of Enterprises and have the date and place of birth and citizenship indicated:

| Name and Title | Date and Place of Birth | Citizenship |
|---|---|---|
| a.  PETER POPOV, Director | January 13, 1952, Pittsburgh, PA | United States of America |
| b.  MICHAEL C. BERKOWITZ, Director | January 15, 1943, Far Rockaway, NY | United States of America |
| c.  IRA C. BIRD Director | May 7, 1928, Muscatine, Iowa | United States of America |
| d.  VASSILIOS M. LIVANOS, Director and President | August 12, 1947, Steubenville, Ohio | United States of America |
| e.  YEHUDA TOLEDANO Director | June 29, 1950, Jerusalem, Israel | Israel |
| f.  AVI NAKASH, Director and Secretary | March 10, 1946, Tel Aviv, Israel | United States of America |
| g.  BRUCE E. KAHLER, Treasurer | September 6, 1942, Brooklyn, NY | United States of America |

These persons stated to be citizens of the United States are so by virtue of birth in the United States, birth abroad of United States citizen parents, naturalization during minority through the naturalization of a parent, naturalization, or otherwise as authorized by law.

4.   At all times pertinent to the allegations of the complaint, Enterprises was and remains a wholly-owned subsidiary of Sim N.V. ("Sim"), a corporation organized and existing under the laws of the Netherlands Antilles.  100 percent of the issued and outstanding capital stock of Enterprises is owned by Sim and was owned by Sim on August 13, 1986.  At all time relevant to this lawsuit, the outstanding and issued shares of capital stock of Sim have been and are owned by the following persons in the shares listed:

Christopher Louvard, a citizen of the Federal Republic of Germany residing in France - 51 percent.

Hermann Arndt, a citizen of the Federal Republic of Germany residing in England - 49 percent.

5.   Enterprises and the Government of Israel ("Israel"), through the Government of Israel Supply Mission, have negotiated a contemplated consecutive voyage charterparty (the "Charterparty") for an initial term of five years, with a two year renewal period at Israel's option.  Under the Charterparty, Enterprises will deliver to Israel from the United States aboard a United States flag vessel only cargoes owned by Israel, viz. grain.  Throughout the term of the Charterparty, Enterprises' vessel would not carry any other cargoes.

6.   In order to perform the Charterparty, Enterprises intends to acquire a foreign-built vessel and document the vessel under United States flag.  The sole purpose of acquiring such a vessel would be to perform Enterprises' obligations under the Charterparty.  For reasons of commercial feasibility, Enterprises has decided that it is necessary to acquire a foreign-built vessel to perform the Charterparty rather than a more costly United States-built vessel or a vessel already documented under United States flag.  After surveying the credit market, Enterprises obtained a commitment from the General Electric Credit Corporation for sufficient credit to acquire a suitable foreign-built vessel to be documented under United States flag for purposes of performing the Charterparty.

7.   In connection with the contemplated Charterparty, and by letter dated August 13, 1986, a true and correct copy of which is attached as Exhibit 3,

Enterprises, by its attorneys, notified the Division of Ship Disposal and Foreign Transfer, Maritime Administration of its plans to acquire a foreign-built, foreign flag vessel for purposes of redocumentation under United States flag and chartering to Israel.  Enterprises took the position that no approval of the Secretary of Transportation (the "Secretary") was necessary for its contemplated Charterparty with Israel; without waiving that position and in order to obtain confirmation of its rights (in view of the severe penalties for violation of the Shipping Act, 1916, as amended), Enterprises filed an application for approval of the contemplated charter with Israel.  A true and correct copy of that application is attached as Exhibit 4.

8.   In connection with our application to the Maritime Administration, we erroneously stated that 49 percent of the shares of Sim, Enterprises' foreign parent, were owned by two United States corporate citizens and that 51 percent of the shares were owned by individuals who are not citizens of the United States.  Upon review of the pertinent corporate records, it now appears that since August 4, 1986, the stock of Sim has always been owned by the individual non-citizens identified in paragraph 4, above.  In any event, MarAd was advised by our counsel in a letter dated August 21, 1986, a true and correct copy of which is attached as Exhibit 5, that Sim was wholly-owned by individuals who are not United States citizens.

9.   MarAd replied to Enterprises' application by letter to our counsel dated September 4, 1986, a true and correct copy of which is hereto attached as Exhibit 6.  MarAd stated that approval of Enterprises' Charterparty was required, that the grant of such approval would be conditioned upon on compatibility with applicable cargo preference principles as determined by MarAd, and that only after having been documented under United States flag for three years would Enterprises'

vessel be fully eligible to participate in the 50 percent share of carriage of cargoes subject to the provisions of the cargo preference laws of the United States.

10.    On September 12, 1986 the Maritime Administrator issued Charter Order No. MA-5918 ("Charter Order") respecting Enterprises' contemplated Charterparty with Israel.  By letter dated December 3, 1986 ("Letter") addressed to Enterprises' counsel, the Foreign Transfer Officer of the Maritime Administration imposed further conditions on Enterprises' contemplated Charterparty with Israel, requested that Enterprises report all its contemplated chartering plans, and further requested that Enterprises report all of Israel's contemplated chartering.  True and correct copies of the Charter Order and the December 3, 1986 letter are attached hereto, respectively, as Exhibit 7 and Exhibit 8.

11.    Because of the issuance of the Charter Order and the related Letter, Enterprises has been unable to obtain financing for acquisition of a vessel to be used in the Charterparty.  Enterprises has approached numerous creditors, including General Electric Credit Corporation, Marine Midland Bank in New York, Greyhound Leasing in London, Christiania Bank og Kreditkasse in New York and other institutions.  As part of its disclosure to these potential creditors, Enterprises revealed the Charter Order and the Letter.  Enterprises was informed by potential creditors that credit would be denied solely because of the terms of condition 3 of the Charter Order and the Letter.  Specifically, creditors have expressed the fear that Enterprises' vessel under the Charterparty might be subject to forfeiture to the United States in the event that the MarAd determines that Israel has failed to arrange the delivery aboard United States flag vessels of at least 50 percent of Israel's imports from the United States purchased with funds Israel received under the Cash Transfer Program.

12.   In connection with negotiating the Charterparty with Israel and obtaining financing for a vessel, as described above, I have been in contact with diplomatic officials of Israel who administer the Cash Transfer Program, including Mr. Shmuel Strauss, Director of the Government of Israel Supply Mission to the United States.  These various Israeli officials, including Mr. Strauss, have assured me that Israel has no treaty, agreement, or understanding of any sort with the United States or any of its agencies whereby Israel has agreed that 50 percent of the cargoes acquired by Israel with its general revenues or with funds it has received under the Cash Transfer Program (including the cargoes contemplated in its Charterparty with Enterprises) shall be transported from the United States to Israel only by vessels documented under United States flag for at least three years or for any other minimum period of time.

13.   Israeli officials, including Mr. Strauss, have informed me that Israel has only an informal, voluntary understanding with the United States that Israel will use its best efforts to ensure that American carriers have a fair share of the market for the carriage of goods from the United States to Israel, and further, that both Israel and the United States Department of State Agency for International Development ("AID") agree that the requirements of the Cargo Preference Act, 46 U.S.C. Section 1241(b), are not incorporated in any understanding between Israel and the United States.

14.   Attached as Exhibits 9, 10 and 11 are true and correct copies of letters to the Government of Israel Supply Mission dated, respectively, December 16, 1985, March 5, 1986, and October 15, 1986.  Attached as Exhibit 12 is a true and correct copy of a letter dated September 18, 1986 from Mr. Strauss to AID.  Attached as Exhibit 13 is a true and correct copy of a letter February 25, 1986 from AID to

the United States Department of Transportation, Maritime Administration, which letter was received by Mr. Strauss.  The foregoing correspondence confirms that it is also AID's view that no minimum documentation period for foreign-built United States flag vessels has been agreed to by the United States and Israel respecting the water-borne delivery of cargoes such as those which are the subject of Israel's contemplated Charterparty with Enterprises.  All the foregoing correspondence listed in this paragraph was delivered to Enterprises by Mr. Strauss.

15.    Attached as Exhibit 14 is a true and correct copy of Mr. Strauss' letter to Enterprises dated January 28, 1987.  I have been informed that Israel remains ready, willing and able immediately to enter into the contemplated Charterparty with Enterprises.  However, in the event that in the near future Enterprises is unable to procure a United States flag vessel for purposes of performing the Charterparty, Israel has expressed its intention to terminate dealings respecting this matter with Enterprises and to enter into a charter with another company.  Thus, Enterprises stands in grave risk of losing an important long term commercial opportunity because, solely as a result of the Charter Order, it will be unable to obtain financing needed for the acquisition of a suitable vessel.

DECLARATION IN LIEU OF JURAT

(28 U.S.C. SECTION 1746)

I, Vassilios M. Livanos, declare under penalty of perjury that the foregoing is true and correct.

Executed on February 25, 1987, at New York, New York.

VASSILIOS M. LIVANOS

BOOK L 99 PAGE 39

14030

PAGE   1

## State of Delaware



### Office of Secretary of State

FILED

FEB 26 1987

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

I, MICHAEL HARKINS, SECRETARY OF STATE OF THE STATE OF
DELAWARE DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF INCORPORATION OF KING SOLOMON
ENTERPRISES, INC. FILED IN THIS OFFICE ON THE THIRTEENTH DAY OF
AUGUST, A.D. 1986, AT 9 O'CLOCK A.M.

: : : : : : : : : : :

Michael Harkins, Secretary of State

AUTHENTICATION:   10914261

DATE:   08/14/1986

RECEIVED FOR RECORD

Aug. 14 A.D. 19 86

Robert J. Donaway
RECORDER

686225014

Exhibit 1

BOOK L 99 PAGE 40

# FILED

AUG 13 1986

# CERTIFICATE OF INCORPORATION

## OF

## KING SOLOMON ENTERPRISES , INC.

-------------

I, THE UNDERSIGNED, in order to form a corporation for the purposes hereinafter stated, under and pursuant to the provisions of the General Corporation Law of the State of Delaware, do hereby certify as follows:

FIRST:  The name of the corporation is

KING SOLOMON ENTERPRISES , INC.

SECOND:  Its registered office is to be located at 229 South State Street, in the City of Dover, in the County of Kent, in the State of Delaware.  The name of its registered agent at that address is the United States Corporation Company.

THIRD:  The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

FOURTH:  The total number of shares of stock which the corporation is authorized to issue is three thousand (3,000) shares, all of which are without par value.

FIFTH:  The name and address of the single incorporator are

Mary Trabona          70 Pine Street, New York, N.Y. 10270

BOOK L 99 PAGE 41

SIXTH:   The By-Laws of the corporation may be made, altered, amended, changed, added to or repealed by the Board of Directors without the assent or vote of the stockholders. Elections of directors need not be by ballot unless the By-Laws so provide.

SEVENTH:   The personal liability of the directors of the corporation is hereby eliminated to the fullest extent permitted by paragraph (7) of subsection (b) of § 102 of the General Corporation Law of the State of Delaware, as the same may be amended and supplemented.

EIGHTH:   The corporation shall, to the full extent permitted by Section 145 of the Delaware General Corporation Law, as amended from time to time, indemnify all persons whom it may indemnify pursuant thereto.

NINTH:   The corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate in the manner now or hereafter prescribed by law, and all rights and powers conferred herein on stockholders, directors and officers are subject to this reserved power.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, the 12th day of August, 1986.


MARY TRABONA     (L.S.)
Mary Trabona

# B Y - L A W S

## OF

## KING SOLOMON ENTERPRISES

-------------

## ARTICLE I

## OFFICES

SECTION 1.  REGISTERED OFFICE.--The registered office shall be established and maintained at the office of the United States Corporation Company, in the City of Dover, in the County of Kent, in the State of Delaware, and said corporation shall be the registered agent of this corporation in charge thereof.

SECTION 2.  OTHER OFFICES.--The corporation may have other offices, either within or without the State of Delaware, at such place or places as the Board of Directors may from time to time appoint or the business of the corporation may require.

## ARTICLE II

## MEETINGS OF STOCKHOLDERS

SECTION 1.  ANNUAL MEETINGS.--Annual meetings of stockholders for the election of directors and for such other business as may be stated in the notice of the meeting, shall be held at such place, either within or without the State of Delaware, and at such time and date as the Board of Directors, by resolution, shall determine and as set forth in the notice of the meeting. In the event the Board of Directors fails to so determine the time, date and place of meeting, the annual meeting of stockholders shall be held at the registered office of the corporation in Delaware on

If the date of the annual meeting shall fall upon a legal holiday, the meeting shall be held on the next succeeding business day.  At each annual meeting, the stockholders entitled to vote shall elect a Board of Directors and they may transact such other corporate business as shall be stated in the notice of the meeting.

SECTION 2.  OTHER MEETINGS.--Meetings of stockholders for any purpose other than the election of directors may be held at such time and place, within or without the State of Delaware, as shall be stated in the notice of the meeting.

SECTION 3.  VOTING.--Each stockholder entitled to vote in accordance with the terms of the Certificate of Incorporation and in accordance with the provisions of these By-Laws shall be

FILED

FEB 26 1987

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

Ex. 2

entitled to one vote, in person or by proxy, for each share of stock entitled to vote held by such stockholder, but no proxy shall be voted after three years from its date unless such proxy provides for a longer period. Upon the demand of any stockholder, the vote for directors and the vote upon any question before the meeting, shall be by ballot. All elections for directors shall be decided by plurality vote; all other questions shall be decided by majority vote except as otherwise provided by the Certificate of Incorporation or the laws of the State of Delaware.

A complete list of the stockholders entitled to vote at the ensuing election, arranged in alphabetical order, with the address of each, and the number of shares held by each, shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours for a period of at least ten days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or, if not so specified, at the place where the meeting is to be held. The list shall also be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.

SECTION 4.  QUORUM.--Except as otherwise required by law, by the Certificate of Incorporation or by these By-Laws, the presence, in person or by proxy, of stockholders holding a majority of the stock of the corporation entitled to vote shall constitute a quorum at all meetings of the stockholders. In case a quorum shall not be present at any meeting, a majority in interest of the stockholders entitled to vote thereat, present in person or by proxy, shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until the requisite amount of stock entitled to vote shall be present. At any such adjourned meeting at which the requisite amount of stock entitled to vote shall be represented, any business may be transacted which might have been transacted at the meeting as originally noticed; but only those stockholders entitled to vote at the meeting as originally noticed shall be entitled to vote at any adjournment or adjournments thereof.

SECTION 5.  SPECIAL MEETINGS.--Special meetings of the stockholders for any purpose or purposes may be called by the President or Secretary, or by resolution of the directors.

SECTION 6.  NOTICE OF MEETINGS.--Written notice, stating the place, date and time of the meeting, and the general nature of the business to be considered, shall be given to each stockholder entitled to vote thereat at his address as it appears on the records of the corporation, not less than ten nor more than sixty days before the date of the meeting. No business other than that stated in the notice shall be transacted at any meeting without the unanimous consent of all the stockholders entitled to vote thereat.

SECTION 7.  ACTION WITHOUT MEETING.--Unless otherwise provided by the Certificate of Incorporation, any action required to be taken at any annual or special meeting of stockholders, or any action which may be taken at any annual or special meeting, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing.

## ARTICLE III

### DIRECTORS

SECTION 1.  NUMBER AND TERM.--The number of directors shall be six (6).  The directors shall be elected at the annual meeting of the stockholders and each director shall be elected to serve until his or her successor shall be elected and shall qualify.  Directors need not be stockholders.

SECTION 2.  RESIGNATIONS.--Any director, member of a committee or other officer may resign at any time.  Such resignation shall be made in writing, and shall take effect at the time specified therein, and if no time be specified, at the time of its receipt by the President or Secretary.  The acceptance of a resignation shall not be necessary to make it effective.

SECTION 3.  VACANCIES.--If the office of any director, member of a committee or other officer becomes vacant, the remaining directors in office, though less than a quorum by a majority vote, may appoint any qualified person to fill such vacancy, who shall hold office for the unexpired term and until his successor shall be duly chosen.

SECTION 4.  REMOVAL.--Except as hereinafter provided, any director or directors may be removed either for or without cause at any time by the affirmative vote of the holders of a majority of all the shares of stock outstanding and entitled to vote, at a special meeting of the stockholders called for the purpose and the vacancies thus created may be filled, at the meeting held for the purpose of removal, by the affirmative vote of a majority in interest of the stockholders entitled to vote.

Unless the Certificate of Incorporation otherwise provides, stockholders may effect removal of a director who is a member of a classified Board of Directors only for cause.  If the Certificate of Incorporation provides for cumulative voting and if less than the entire board is to be removed, no director may be removed without cause if the votes cast against his removal would be sufficient to elect him if then cumulatively voted at an

election of the entire board of directors, or, if there be classes of directors, at an election of the class of directors of which he is a part.

If the holders of any class or series are entitled to elect one or more directors by the provisions of the Certificate of Incorporation, these provisions shall apply, in respect to the removal without cause of a director or directors so elected, to the vote of the holders of the outstanding shares of that class or series and not to the vote of the outstanding shares as a whole.

SECTION 5.   INCREASE OF NUMBER.--The number of directors may be increased by amendment of these By-Laws by the affirmative vote of a majority of the directors, though less than a quorum, or, by the affirmative vote of a majority in interest of the stockholders, at the annual meeting or at a special meeting called for that purpose, and by like vote the additional directors may be chosen at such meeting to hold office until the next annual election and until their successors are elected and qualify.

SECTION 6.   POWERS.--The Board of Directors shall exercise all of the powers of the corporation except such as are by law, or by the Certificate of Incorporation of the corporation or by these By-Laws conferred upon or reserved to the stockholders.

SECTION 7.   COMMITTEES.--The Board of Directors may, by resolution or resolutions passed by a majority of the whole board, designate one or more committees, each committee to consist of two or more of the directors of the corporation.   The board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.   In the absence or disqualification of any member of such committee or committees, the member or members thereof present at any meeting and not disqualified from voting, whether or not he or they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.

Any such committee, to the extent provided in the resolution of the Board of Directors, or in these By-Laws, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the corporation, and may authorize the seal of the corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to amending the Certificate of Incorporation, adopting an agreement of merger or consolidation, recommending to the stockholders the sale, lease or exchange of all or substantially all of the corporation's property and assets, recommending to the stockholders a dissolution of the corporation or a revocation of a dissolution, or amending the By-Laws of the corporation; and, unless the resolu-

-4-

tion, these By-Laws or the Certificate of Incorporation expressly so provide, no such committee shall have the power or authority to declare a dividend or to authorize the issuance of stock.

SECTION 8.    MEETINGS.--The newly elected directors may hold their first meeting for the purpose of organization and the transaction of business, if a quorum be present, immediately after the annual meeting of the stockholders; or the time and place of such meeting may be fixed by consent in writing of all the directors.

Regular meetings of the directors may be held without notice at such places and times as shall be determined from time to time by resolution of the directors.

Special meetings of the board may be called by the President or by the Secretary on the written request of any two directors on at least two days' notice to each director and shall be held at such place or places as may be determined by the directors, or as shall be stated in the call of the meeting.

Unless otherwise restricted by the Certificate of Incorporation or these By-Laws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or any committee, by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

SECTION 9.    QUORUM.--A majority of the directors shall constitute a quorum for the transaction of business.  If at any meeting of the board there shall be less than a quorum present, a majority of those present may adjourn the meeting from time to time until a quorum is obtained, and no further notice thereof need be given other than by announcement at the meeting which shall be so adjourned.

SECTION 10.    COMPENSATION.--Directors shall not receive any stated salary for their services as directors or as members of committees, but by resolution of the board a fixed fee and expenses of attendance may be allowed for attendance at each meeting.  Nothing herein contained shall be construed to preclude any director from serving the corporation in any other capacity as an officer, agent or otherwise, and receiving compensation therefor.

SECTION 11.    ACTION WITHOUT MEETING.--Any action required or permitted to be taken at any meeting of the Board of Directors, or of any committee thereof, may be taken without a meeting, if prior to such action a written consent thereto is signed by all members of the board, or of such committee as the case may be, and such written consent if filed with the minutes of proceedings of the board or committee.

-5-

# ARTICLE IV

## OFFICERS

SECTION 1.  OFFICERS.--The officers of the corporation shall be a President, a Treasurer, and a Secretary, all of whom shall be elected by the Board of Directors and who shall hold office until their successors are elected and qualified.  In addition, the Board of Directors may elect a Chairman, one or more Vice-Presidents and such Assistant Secretaries and Assistant Treasurers as they may deem proper.  None of the officers of the corporation need be directors.  The officers shall be elected at the first meeting of the Board of Directors after each annual meeting.  More than two offices may be held by the same person.

SECTION 2.  OTHER OFFICERS AND AGENTS.--The Board of Directors may appoint such other officers and agents as it may deem advisable, who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors.

SECTION 3.  CHAIRMAN.--The Chairman of the Board of Directors, if one be elected shall preside at all meetings of the Board of Directors and he shall have and perform such other duties as from time to time may be assigned to him by the Board of Directors.

SECTION 4.  PRESIDENT.--The President shall be the chief executive officer of the corporation and shall have the general powers and duties of supervision and management usually vested in the office of President of a corporation.  He shall preside at all meetings of the stockholders if present thereat, and in the absence or non-election of the Chairman of the Board of Directors, at all meetings of the Board of Directors, and shall have general supervision, direction and control of the business of the corporation.  Except as the Board of Directors shall authorize the execution thereof in some other manner, he shall execute bonds, mortgages and other contracts in behalf of the corporation, and shall cause the seal to be affixed to any instrument requiring it and when so affixed the seal shall be attested by the signature of the Secretary or the Treasurer or an Assistant Secretary or an Assistant Treasurer.

SECTION 5.  VICE-PRESIDENT.--Each Vice-President shall have such powers and shall perform such duties as shall be assigned to him by the directors.

SECTION 6.  TREASURER.--The Treasurer shall have the custody of the corporate funds and securities and shall keep full and accurate account of receipts and disbursements in books belonging to the corporation.  He shall deposit all moneys and other valuables in the name and to the credit of the corporation in such depositaries as may be designated by the Board of Directors.

The Treasurer shall disburse the funds of the corporation as may be ordered by the Board of Directors, or the President, taking proper vouchers for such disbursements. He shall render to the President and Board of Directors at the regular meetings of the Board of Directors, or whenever they may request it, an account of all his transactions as Treasurer and of the financial condition of the corporation. If required by the Board of Directors, he shall give the corporation a bond for the faithful discharge of his duties in such amount and with such surety as the board shall prescribe.

SECTION 7.  SECRETARY.--The Secretary shall give, or cause to be given, notice of all meetings of stockholders and directors, and all other notices required by law or by these By-Laws, and in case of his absence or refusal or neglect so to do, any such notice may be given by any person thereunto directed by the President, or by the directors, or stockholders, upon whose requisition the meeting is called as provided in these By-Laws. He shall record all the proceedings of the meetings of the corporation and of the directors in a book to be kept for that purpose, and shall perform such other duties as may be assigned to him by the directors or the President. He shall have custody of the seal of the corporation and shall affix the same to all instruments requiring it, when authorized by the directors or the President, and attest the same.

SECTION 8.  ASSISTANT TREASURERS AND ASSISTANT SECRETARIES.--Assistant Treasurers and Assistant Secretaries, if any, shall be elected and shall have such powers and shall perform such duties as shall be assigned to them, respectively, by the directors.

## ARTICLE V

### MISCELLANEOUS

SECTION 1.  CERTIFICATES OF STOCK.--Certificate of stock, signed by the Chairman or Vice Chairman of the Board of Directors, if they be elected, President or Vice-President, and the Treasurer or an Assistant Treasurer, or Secretary or an Assistant Secretary, shall be issued to each stockholder certifying the number of shares owned by him in the corporation. Any of or all the signatures may be facsimiles.

SECTION 2.  LOST CERTIFICATES.--A new certificate of stock may be issued in the place of any certificate theretofore issued by the corporation, alleged to have been lost or destroyed, and the directors may, in their discretion, require the owner of the lost or destroyed certificate, or his legal representatives, to give the corporation a bond, in such sum as they may direct, not exceeding double the value of the stock, to indemnify the corporation against any claim that may be made against it on account of the alleged loss of any such certificate, or the issuance of any such new certificate.

SECTION 3.   TRANSFER OF SHARES.--The shares of stock of the corporation shall be transferable only upon its books by the holders thereof in person or by their duly authorized attorneys or legal representatives, and upon such transfer the old certificates shall be surrendered to the corporation by the delivery thereof to the person in charge of the stock and transfer books and ledgers, or to such other person as the directors may designate, by whom they shall be cancelled, and new certificates shall thereupon be issued.  A record shall be made of each transfer and whenever a transfer shall be made for collateral security, and not absolutely, it shall be so expressed in the entry of the transfer.

SECTION 4.   STOCKHOLDERS RECORD DATE.--In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors may fix, in advance, a record date, which shall not be more than sixty nor less than ten days before the date of such meeting, nor more than sixty days prior to any other action.   A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

SECTION 5.   DIVIDENDS.--Subject to the provisions of the Certificate of Incorporation, the Board of Directors may, out of funds legally available therefor at any regular or special meeting, declare dividends upon the capital stock of the corporation as and when they deem expedient.  Before declaring any dividend there may be set apart out of any funds of the corporation available for dividends, such sum or sums as the directors from time to time in their discretion deem proper for working capital or as a reserve fund to meet contingencies or for equalizing dividends or for such other purposes as the directors shall deem conducive to the interests of the corporation.

SECTION 6.   SEAL.--The corporate seal shall be circular in form and shall contain the name of the corporation, the year of its creation and the words "CORPORATE SEAL DELAWARE."  Said seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise.

SECTION 7.   FISCAL YEAR.--The fiscal year of the corporation shall be determined by resolution of the Board of Directors.

SECTION 8.   CHECKS.--All checks, drafts or other orders for the payment of money, notes or other evidences of indebtness issued in the name of the corporation shall be signed by such officer or officers, agent or agents of the corporation, and in such manner as shall be determined from time to time by resolution of the Board of Directors.

SECTION 9.   NOTICE AND WAIVER OF NOTICE.--Whenever any notice is required by these By-Laws to be given, personal notice is not meant unless expressly so stated, and any notice so required shall be deemed to be sufficient if given by depositing the same in the United States mail, postage prepaid, addressed to the person entitled thereto at his address as it appears on the records of the corporation, and such notice shall be deemed to have been given on the day of such mailing.   Stockholders not entitled to vote shall not be entitled to receive notice of any meetings except as otherwise provided by Statute.

Whenever any notice whatever is required to be given under the provisions of any law, or under the provisions of the Certificate of Incorporation of the corporation or these By-Laws, a waiver thereof in writing, signed by the person or persons entitled to said notice, whether before or after the time stated therein, shall be deemed equivalent thereto.

ARTICLE VI

AMENDMENTS

These By-Laws may be altered or repealed and By-Laws may be made at any annual meeting of the stockholders or at any special meeting thereof if notice of the proposed alteration or repeal or By-Law or By-Laws to be made be contained in the notice of such special meeting, by the affirmative vote of a majority of the stock issued and outstanding and entitled to vote thereat, or by the affirmative vote of a majority of the Board of Directors, at any regular meeting of the Board of Directors, or at any special meeting of the Board of Directors, if notice of the proposed alteration or repeal, or By-Law or By-Laws to be made, be contained in the notice of such special meeting.

WASHINGTON
RESIDENT COUNSEL
JOHN W. McCONNELL, JR.

NEW YORK PARTNERS

JUAN A ANDUIZA
RICHARD G. ASHWORTH
RICHARD S BARNETT
R GLENN BAUER
FRANCIS X BYRN
STEPHEN K CARR
RANDAL R CRAFT, JR.
RICHARD A. CROWLEY
OLIVER EDWARDS
MARK C FLAVIN
NANCY L. HENGEN
WILLIAM J. HONAN III
CHESTER D HOOPER
THOMAS R H HOWARTH
RICHARD L JARASHOW
EDWARD L. JOHNSON
BARTON T. JONES
DAVID JUNGMAN
DONALD J KENNEDY
EMIL A KRATOVIL, JR
ELIOT H LUMBARD
HOWARD S MILLER
SANFORD C MILLER
THOMAS F MOLANPHY
MAURICE L NOYER
WILLIAM F. PAN
JOHN F PRITCHARD
LENNARD K. RAMBUSCH
JOHN J REILLY
JAMES J SENTNER, JR
GARY D SESSER
BRIAN D STARER
THEODORE M SYSOL
JOHN K. WEIR
THOMAS J WHALEN

# HAIGHT, GARDNER, POOR & HAVENS

## 2828 PENNSYLVANIA AVENUE, N.W.

### WASHINGTON, D.C. 20007

TELEPHONE (202) 775-1300

TELECOPIER (202) 342-1972

(202) 965-7615

CABLE: MOTOR WASHINGTON
WU TELEX: 892598

NEW YORK OFFICE
ONE STATE STREET PLAZA
NEW YORK, N.Y. 10004
TELEPHONE (212) 344-6800
RAPIFAX (212) 422-7167
CABLE: MOTOR NEW YORK
TRT TELEX:177180
ITT TELEX: 424674
RCA TELEX: 232974
WU TELEX: 127683
WUI TELEX: 620362

HOUSTON OFFICE
3800 TEXAS COMMERCE TOWER
HOUSTON, TEXAS 77002
TELEPHONE:(713) 220-4600
TELECOPIER:(713) 225-6386
CABLE: MOTOR HOUSTON
ITT TELEX: 4620532
WU TELEX: 762916

PARIS AFFILIATE
FRANCOIS LEGREZ
SOCIÉTÉ DE CONSEILS JURIDIQUES
41, AVENUE MONTAIGNE
75008 PARIS, FRANCE
TELEPHONE:(33)(1) 4720-8202
CABLE: MOTOR PARIS
TELEX: 614178

HONG KONG OFFICE
CAXTON HOUSE
I DUDDELL STREET, CENTRAL
HONG KONG
TELEPHONE:(882)(5) 263135
TELECOPIER:(882)(5) 295874
TELEX: 86139 HGPH HK

August 13, 1986

Division of Ship Disposal and Foreign Transfer
Maritime Administration
U.S. Department of Transportation
Room 2112 Nassif Building
400 Seventh Street, S.W.
Washington, D.C.  20590

      Attention:  <u>Mrs. Jessie Fernanders</u>

               Re:  <u>Charter of Vessel Alien</u>
                    Our File:  3398-27

Dear Ms. Fernanders:

    We enclose (1) an Application on Form MA-29, for King
Solomon Enterprises, Inc. ("Enterprises") for a possible
charter of a vessel to an alien, (2) a copy of the proposed
charter party, and (3) our check made payable to the order
of the Maritime Administration in the amount of $250.00 for
the fee for approving the request to charter that vessel.

    Enterprises, a Delaware corporation and a citizen of
the United States for documentation purposes but not as
defined in Section 2 of the Shipping Act, 1916, as amended
("Act"), plans to purchase a foreign-flag vessel and to
document that vessel under U.S. laws.  The ship to be
purchased will be a Panamax bulk carrier.  When acquired and
documented, Enterprises plans to time charter that vessel to
the Government of Israel.  We represent Enterprises and

Ex. 3

Maritime Administration
Page 2
August 13, 1986

General Electric Credit Corporation ("GECC").  The latter
has agreed to finance the acquisition of the vessel to be
secured by a preferred ship mortgage and assignment of the
time charter.  Enterprises will enter into a ship management
contract with a U.S. corporation to fully manage the vessel
during the period of the time charter.

As indicated on the attachment to MA-29, Enterprises is
incorporated and exists under the laws of the State of
Delaware.  Its President and chief executive officer and the
chairman of its Board of Directors are citizens of the
United States.  Its Board of Directors is composed of three
persons, two of whom are citizens of the United States and
the third person is not a U.S. citizen.  A quorum of its
Board of Directors is three members.  All of its stock is
owned by Sim, N.V., a Netherlands Antilles Corporation.  The
stock of Sim N.V. is owned 49% by Marine Transport Lines and
Kedma Ltd in equal amounts, both U.S. corporations, and 51%
by Christopher Louvard, a West German citizen residing in
France.  Enterprises is a citizen of the United States for
purposes of documentation under U.S. laws of the
foreign-flag vessel to be acquired by it and re-documented
under U.S.-flag.

It is our position that the time charter of that vessel
by Enterprises to the Government of Israel is not subject to
the provisions of Section 9 of the Act and can be time
chartered without the approval of the Secretary of
Transportation acting through the Maritime Administration.
We so advised our clients and GECC wrote to the Chief
Counsel, Maritime Administration, to which it attached a
copy of our opinion to it, to that affect, asking for
confirmation that Section 9 was not applicable and that
approval was not required.

Without waiving that position, we are filing this
Application and requesting that either it be approved or we
be advised that such approval is not required or that no
action will be taken on the Application and the planned
transaction.  As pointed out in GECC'S letter to the Chief
Counsel, the acquisition and financing of the vessel must be
accomplished in the near future and time is of the essence.
Therefore, your expeditious consideration of this request
would be much appreciated.  If there should be any further
documentation or information required or if there should be
any questions with regard to this request, please call us.

Maritime Admi.  stration
Page 3
August 13, 1986


   With warm regards and best wishes.

                          Sincerely,

                    HAIGHT, GARDNER, POOR & HAVENS

                    By

                          John W. McConnell, Jr.

/am

Enclosure

Form Approved: OMB No. 2133-0006



U.S. Department
of Transportation

Maritime
Administration

## REQUEST FOR TRANSFER OF OWNERSHIP, REGISTRY, AND FLAG, OR CHARTER, LEASE, OR MORTGAGE OF U.S. CITIZEN-OWNED DOCUMENTED VESSELS

*Processing of the application requires approximately 30 days from the date received in Marad*

**IMPORTANT** — Submit the original only of MA-29 together with check and documents for which approval is requested to:

**READ INSTRUCTIONS BEFORE COMPLETING FORM**
*(See Part VIII)*

**ATTN:**
**Department of Transportation**
**Maritime Administration - MAR 741**
**400 Seventh St., S.W.**
**Washington, D.C. 20590**

*No approval for the sale, transfer, charter, lease, or mortgage of a U.S. privately-owned vessel to a non-citizen may be granted unless a completed application form has been received (46 U.S.C. 808 and 839).*

THE UNDERSIGNED, ___**King Solomon Enterprises, Inc.**___

FILED
FEB 26 1987
CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

*(Name of owner(s) of record of vessel)*

___39 Broadway, New York, NY___            ___Delaware___

*(Address of owner(s) — number, street, city, State and Zip code)*        *(Citizenship of owner(s))*

the owner of the vessel described below (hereinafter referred to as the "Vessel"), hereby applies for the approval required by Sections 9 and 41 of the Shipping Act, 1916, as amended, (46 U.S.C. 808 and 839), of the following transaction(s):

(1) ☐ Sale   ☒ Charter   ☐ Lease   ☐ Mortgage   of the vessel to alien, namely:

___Government of Israel___

*(Alien's name, address — Number, street, city, and country)*

(2) ☐ Documentation or transfer of vessel to_____ registry and flag.
                                                    *(Foreign)*
and represents the following information to be accurate and true.

▶ **PART I – VESSEL**

| (a) Name of vessel and official number<br>**Panamax Bulk Carrier to be Nominated** | | (b) Former names or designations (If former military craft, give military designation) | | | |
|---|---|---|---|---|---|
| (c) Type (Cargo, tanker, etc.) | d. Propulsive power-fuel | | e. Average speed loaded | f. Length | |
| (g) When and where built (Initially constructed) | | | | **TONNAGE** | |
| | | | | (h) DWT | (i) Gross |
| (j) When acquired | From whom | | | (k) Present home port of vessel | |
| (l) Total complement | | Officers | | Crew | |
| (m) Will employment be available for these officers and crew if ship is sold or transferred?   ☐ Yes   ☐ No   (If "Yes", explain) | | | | | |
| (n) Is vessel now in operation?   ☐ Yes   ☐ No   If "Yes," in what trade has vessel been generally operated during the last two years? | | | | | |
| (o) Is vessel laid up?   ☐ Yes   ☐ No   If "Yes," give location and state for how long. | | | | | |

EX 4

(a) Is a citizen of_____ the go rnment of Israel

(Give  and place of birth)

If alien is a corporation, also state:

(1) Place and date of incorporation.

(2) Names, addresses and nationality of directors, officers and stockholders, and percentage of stock owned by each.
(If more space is needed, attach an additional sheet.)

N/A

---

(b) Will the owner or its affiliated corporations or persons make any agreements with the purchaser, charterer, mortgagee, or lessee to operate this or any other of the purchaser's vessels through charter or otherwise, or to act as operating agent, general agent or sub-agent? (If so, explain all such arrangements)

N/A

---

**PART III — SALE OR TRANSFER** (Complete ONLY if approval is requested of sale or transfer to alien)

(a) Has vessel been offered for sale to American citizen?   ☐ Yes   ☐ No   If "Yes," period of time on market.

(b) Owner's reason for desiring to sell or transfer

(c) Is vessel to be replaced?   ☐ Yes   ☐ No   If "Yes," explain.

(d) If vessel is 1,350 gross tons or over, is not less than 12 years old, and has been owned by the applicant for three (3) years prior to the date hereof, would applicant be interested in turning in said vessel to the Maritime Administration as credit towards the construction of a new vessel, pursuant to Sections 507 or 510 of the Merchant Marine Act 1936, as amended (46 U.S.C. 1157 or 1160)?

☐ Yes   ☐ No   (State the reasons for this decision.)

Form MA-29 (Rev. 10-81)

▶ **PART III — SALE OR TRANSFER (Continued)**

(e) Give details as to proposed scrapping or as to proposed employment and trade in which the vessel will be operated under foreign registry, such as commodities to be carried, range of ports, etc. If fishing vessel, state for pleasure or commercial use and type such as tuna, purse seiner, shrimp, etc.

▶ **PART IV — CHARTER OR LEASE** (*Complete ONLY if approval is requested of charter or lease to alien*)

| (a) Form of charter or lease | (b) Duration of charter or lease |
|---|---|
| consecutive voyage charter | 5 years with 2 year renewal option |

(c) Area(s) of operation and commodities to be carried

Worldwide grain

(d) Date of commencement   approximately November 1, 1986

▶ **PART V — MORTGAGE** (*Complete ONLY if approval is requested of mortgage to alien*)

| (a) Amount of mortgage | (b) Terms |
|---|---|
|  |  |

▶ **PART VI — ADDITIONAL REQUIREMENTS**

(a) Attach Certificate of Ownership of the vessel (U.S. Coast Guard Form 1330) issued by the U.S. Coast Guard at Home Port of vessel not more than 30 days prior to date of application for sales, transfers, mortgages, and bareboat charters.

(b) If vessel is covered by a preferred mortgage, or is subject to a preferred lien, the written consent of the mortgagee or lienor to surrender of the marine document incident to the sale alien and/or transfer to foreign registry and flag, or to the bareboat charter, of the vessel, must be attached. If the mortgagee or lienor is a business, the consent must be attested to by appropriate official or notarized. If the mortgagee or lienor is an individual, the consent must be notarized.

(c) Attach Pro-forma copy of sales, charter, mortgage, or lease agreement, as appropriate.

(d) Maritime Administration regulations (46 CFR 221) require the payment of a user charge on each application, in an amount as follows:

Sale or transfer to foreign ownership, registry and flag:

   Vessels 3,000 gross tons and over . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $325.00 per vessel

   Vessels of less than 3,000 gross tons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 170.00 per vessel

Charter, lease or mortgage to alien . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 250.00 per vessel

Modification of any approval granted — the same as for the original approval.

Payment shall be made by Cashier's Check, certified check, or money order, payable to "Maritime Administration."

▶ **PART VII — CONDITIONS OF APPROVAL**

Under the provisions of Section 41 of the Shipping Act, 1916, as amended (46 U.S.C. § 839) conditions may be imposed in connection with any approval that may be given pursuant to this application, the failure of performance of which entails the penalties of the law. The Maritime Administration's approval of transfer of vessels of 3000 gross tons and over to foreign ownership or registry, or both (whether for operation or scrapping) will be subject to the terms and conditions of its current Foreign Transfer Policy (46 CFR 221 Appendix), copy of which will be furnished upon request. In unusual circumstances, conditions may also be imposed on vessels under 3000 gross tons approved for transfer foreign. A U.S. surety company bond or other surety satisfactory to the Maritime Administration will be required to guarantee performance of an agreement containing any such conditions imposed.

(a) If signed by an agent of the owner, ... er evidence of the authority under which agent ...ts must be attached.

(b) If the owner is a corporation, name and title of executive official executing this application must be given, and Secretary thereof must attest it and affix corporate seal.

(c) The particular attention of the applicant is directed to the following provisions of Section 41 of the Shipping Act, 1916, as amended (46 U.S.C. § 839):

Whenever by this Act the approval of the board is required to render any act or transaction lawful, whoever knowingly makes any false statement of a material fact to the board (Maritime Administration), or to any member thereof, or to any officer, attorney, or agent thereof, for the purpose of securing such approval, shall be guilty of a misdemeanor and subject to a fine of not more than $5,000, or to imprisonment for not more than five years, or both.

► **PART IX — EXECUTION** *(Application not acceptable unless completed according to all requirements and instructions)*

IN WITNESS WHEREOF this application has been duly executed at ___New York, New York___,

this ___12th___ day of ___August___ 19 ___86___

KING SOLOMON ENTERPRISES, INC.

(1) _Valhilm W. Aranot_
(Present owner(s) of vessel)

(3) Attest:

No Seal
(Affix corporate seal)

(2)_____
(Name and title of executive official)

_____
(Name and title)

(1) For use by individual owner(s) of vessel. If corporation, type in name.

(2) For use by executive official executing application.

(3) For use by attesting official of corporation (if no seal so state).

**(SUBMIT ORIGINAL ONLY)**

Ownership of King Solomon Enterprises, Inc.:

100% owned by Sim N.V., a Netherlands Antilles
corporation which in turn will be owned 24 1/2% by
Marine Transport Lines, 24 1/2% by Kedma Ltd. and 51%
by Mr. Christopher Louvard, a German citizen living at
4 Domaine de la Foret, 78112 Fourqueux, France.

WASHINGTON
RESIDENT COUNSEL
JOHN W. McCONNELL, JR

NEW YORK PARTNERS

JUAN A. ANDUZA
RICHARD O. ASHWORTH
RICHARD B. BARNETT
R. GLENN BAUER
FRANCIS X. BYRN
STEPHEN A. CARR
RANDAL R. CRAFT, JR
RICHARD A. CROWLEY
OLIVER EDWARDS
MARK C. FLAVIN
NANCY L. HENGEN
WILLIAM J. HONAN III
CHESTER O. HOOPER
THOMAS R. H. HOWARTH
RICHARD L. JARASHOW
EDWARD L. JOHNSON
BARTON T. JONES
DAVID JUNGMAN
DONALD J. KENNEDY
EMIL A. ARATOVILL, JR
ELIOT H. LUMBARD
HOWARD S. MILLER
SANFORD C. MILLER
THOMAS F. MOLANPHY
MAURICE L. NOYER
WILLIAM F. PAN
JOHN F. PRITCHARD
LENNARD K. RAMBUSCH
JOHN J. REILLY
JAMES J. SENTNER, JR
GARY D. SESSER
BRIAN D. STARER
THEODORE M. SYSOL
JOHN K. WEIR
THOMAS J. WHALEN

HAIGHT, GARDNER, POOR & HAVENS

2828 PENNSYLVANIA AVENUE, N. W.

WASHINGTON, D. C. 20007

TELEPHONE (202) 775-1300

TELECOPIER (202) 342-1972

(202) 965-7615

CABLE MOTOR WASHINGTON

WU TELEX: 892598

NEW YORK OFFICE
ONE STATE STREET PLAZA
NEW YORK, N Y 10004
TELEPHONE (212) 344-6600
RAPIFAX (212) 422-7167
CABLE MOTOR NEW YORK
TRT TELEX 177190
I T T TELEX 424674
RCA TELEX 222974
W U TELEX 127683
WUI TELEX 620362

HOUSTON OFFICE
3900 TEXAS COMMERCE TOWER
HOUSTON, TEXAS 77002
TELEPHONE (713) 220-4600
TELECOPIER (713) 226-6396
CABLE MOTOR HOUSTON
ITT TELEX 4620632
WU TELEX 762916

PARIS AFFILIATE
FRANCOIS LEGREZ
SOCIÉTÉ DE CONSEILS JURIDIQUES
41, AVENUE MONTAIGNE
75008 PARIS, FRANCE
TELEPHONE (331)(1) 4720 6802
CABLE MOTOR PARIS
TELEX: 616179

HONG KONG OFFICE
CAXTON HOUSE
DUDDELL STREET, CENTRAL
HONG KONG
TELEPHONE (852)(5) 283135
TELECOPIER (852)(5) 295674
TELEX 66139 HGPH HX

August 21, 1986

Division of Ship Disposal and Foreign Transfer
Maritime Administration
U.S. Department of Transportation
Room 2112 Nassif Building
400 Seventh Street, S.W.
Washington, D.C.  20590

    Attention:  <u>Mrs. Jessie Fernanders</u>

        Re:  <u>Charter of Vessel Alien</u>
           Our File:  3398-27

Dear Ms. Fernanders:

    This is in regard to, and supplements, the Application filed on behalf of King Solomon Enterprises, Inc. ("Enterprises") on August 13, 1986, for the approval of the charter of a vessel to a non-U.S. citizen.

    In our cover letter to that Application, we set out the citizenship of the president and chief executive officer, the chairman of the board of directors and the directors of that corporation.  We advised that all of its stock is owned by Sim, N.V., Netherlands Antilles corporation, and that the stock of that corporation was owned 49% by Marine Transport Lines and Kedma Ltd, both U.S. corporations, in equal amounts and that 51% was owned by Christopher Louvard, a West German citizen residing in France.  This is to advise that the stock of Sim, N.V. owned by Marine Transport Lines and Kedma Ltd. has been transferred to Hermann Arndt, a citizen of West Germany, residing in England.  Thus there is no stock in either Enterprises or its sole shareholder, Sim, N.V., owned by U.S. citizens.

Ex. 5

Maritime Administration
Page 2
August 21, 1986

The ownership of all the stock of Sim, N.V. by Messrs Louvard and Arndt, non-citizens of the United States shall remove any question that the proposed charter of the vessel does in any manner transfer that vessel "or any interest therein owned in whole or in part by a citizen of the United States". In fact, as recognized in United States v. Niarchos, 125 F. Supp. 214 (D.D.C. 1954), a case involving the transfer of shares of stock and the effect of Section 9 of the Shipping Act, 1916, (at 228) "[t]he transfer of stock is not, on its face, a transfer of any interest in a vessel. The settled rule is that a corporation's property interests and a stockholder's stock interests are distinct. Title to corporate property is held in the name of the corporation and not by its stockholder. Likewise, a stockholder's holdings are in the corporation and not specifically in any of its assets. ... We may not assume that Congress intended to give the words 'any vessel or any interest therein' an unusual meaning." The holding in Chemical Bank New York Trust Company v. Westhampton, 358 F.2d 574 (2d Cir. 1966) that (at 584) "[it] also shows the Congressional purpose that a share of stock should be considered an 'interest' in the property owned by the issuing corporation" is not only dicta (since a corporate bond not stock was at issue in that case) but is based on faulty analysis of the legislative history of sections 9 and 37 of the 1916 Act. In this case, the point is even more remote because the shareholder of the corporation owning the vessel to be chartered is another corporation (non-U.S.) and it is only shareholders of that second corporation that are U.S. citizens (two U.S. corporations). Thus Sim, the sole shareholder of Enterprises, would have by reason of that stock ownership an "interest" in the vessel and the two U.S. corporate shareholders of Sim would have an "interest" in the stock of Enterprises owned by Sim and in turn an "interest" in the vessel owned by Enterprises by reason of their "interest" in the stock of Enterprises through Sim.

This is also to advise that specific vessels being considered for acquisition and documentation under U.S. laws by Enterprises are the following:

M/V Rayna, built in 1981 by Hitachi in Japan to ABS classification and registered under the Greek flag; powered by a Sulzer diesel engine (13,500 BHP); of 59,460 metric tons dead weight (MTDW);.

M/V Pacific Patriot built in Govan, England in 1982 to Lloyds classifications and registered under U.K. flag; powered by a B&W diesel (15,400 BHP); of 66,980 MTDW.

Maritime Administration
Page 3
August 21, 1986


M/V Oak Sun built in Koyo, Japan in 1982 to Lloyds classification and documented under Liberian flag; powered by a Mitsui B&W (13,100 BHP); of 61,537 MTDW.

If the charter is approved, Enterprises plans to purchase one of these vessels and to document it under U.S. flag. These vessels are of five years of age or less and would be an asset to the U.S.-flag fleet. This should be an important consideration in approving the Application to charter such vessel.

As pointed out in our previous letter, time is of the essence in this matter in regard to both the acquisition and financing of the vessel and the chartering of the same and an immediate answer to the Application must be forthcoming. We trust that the above information will be helpful in making this decision but, if there should be any questions or any additional information desired, please let us know immediately.

Sincerely,

HAIGHT, GARDNER, POOR & HAVENS

By

John W. McConnell, Jr.

/am

cc:  Chief Counsel
     Maritime Administration



U.S. Department
of Transportation

**Maritime
Administration**

SEP 4  1986

400 Seventh Street, S.W.
Washington, D.C. 20590

John W. McConnell, Jr. Esq.
Haight, Gardner, Poor & Havens
2828 Pennsylvania Avenue, N.W.
Washington, D.C.  20007

Dear Mr. McConnell:

On behalf of King Solomon Enterprises, Inc. (Enterprises), you
have submitted and an interested party has submitted several
items of correspondence dated:  July 24, 1986, August 13, 1986,
and August 21, 1986 (Haight, Gardner, Poor & Havens) and July 25,
1986 (General Electric Credit Corporation).

The proposed transaction at present is summarized as follows.
Enterprises is a Delaware corporation which does not meet the
United States citizenship criterion of Section 2, Shipping Act
1916, as amended (46 App. U.S.C. 802), solely because none of the
shares are owned by citizens of the United States.  All the
shares of Enterprises are owned by a Netherlands Antilles
corporation, Sim N.V. (Sim).  All the shares of Sim are owned by
two individuals (49%/51%) who are citizens of West Germany.

Enterprises would purchase one of the following three ships and
reflag the ship under the laws of the United States:

| Ship | Built | Present Flag |
|------|-------|--------------|
| M/V RAYNA | Japan 1981 | Greece |
| M/V PACIFIC PATRIOT | England 1982 | United Kingdom |
| M/V OAK SUN | Japan 1982 | Liberia |

Enterprises would enter worldwide grain trade and, in particular,
would participate, to the extent permissible, in the carriage of
goods subject to the cargo preference laws of the United States.
The mode of such participation would be through time or voyage
charter(s) to the Government of Israel or an instrumentality
thereof (GOI).

Notwithstanding certain reservations as to its applicability, you
have requested approval of such time or voyage charter(s) under
Section 9, Shipping Act 1916 (46 App. U.S.C. 808).  You also have
indicated interest in defining a condition of approval which
might be consistent with your client's business arrangements and
schedule, as presented.

RECEIVED SEP  4 1986

EX-6

- 2 -

Both you and I are aware of the previous, and likely related, proposal regarding Marine Transport Lines, Inc. and the M/V MARINE PRINCESS.  Thus, the present situation has a contextual reference.

I have reached the following conclusions:

1)  **Section 9 approval is required for the charter of the ship by Enterprises to GOI.**

2)  Approval would be conditioned upon compatibility with the applicable cargo preference principles.

3)  The central condition would be that carriage by the ship of any cargoes subject to the provisions of Section 901(b), Merchant Marine Act, 1936, as amended (46 App. U.S.C. 1241), would not be recognized for purposes of satisfying the 50 percent requisite share reserved for U.S.-flag vessels until expiration of the statutory three-year period.  In other words, such cargoes would fall exclusively into the portion available to foreign-flag ships.  Additionally, it is noted that the enactment of the amendment to Section 901(b) in December 1985 would not preclude immediate participation by a re-flagged vessel as to the incremental amount of cargo above said 50 percent share reserved to U.S.-flag vessels.  A method of monitoring adherence to such requirements would be necessary.

A draft of the implementing charter order is enclosed.

By way of comments, the draft voyage charter party provided with your letter dated August 13, 1986, will need revision to accommodate this course of action.  I suggest special attention to Articles 8(a)(i), 10(a)-(d) and 11(a).

I also suggest close consideration of the terms of Article 8(a)(vi)(i) in the draft charter party.  Clearance from the Department of Commerce's Office of Export Administration to assure conformity with the "anti-boycott" statutes and rules administered by that Department would appear to be in order.

Sincerely,

J.C. FERNANDERS
Foreign Transfer Officer

Enclosure

U.S. DEPARTMENT OF TRANSPORTATION
MARITIME ADMINISTRATION
WASHINGTON, D.C. 20590

CHARTER ORDER NO. MA-

Approving the Time or Voyage Charter(s) to an
Alien of either M/V RAYNA or MV/PACIFIC PATRIOT or M/V OAK SUN
------------------------------------------------------------------

WHEREAS, An application has been filed by King Solomon
Enterprises, Inc. (Enterprises), a Delaware corporation, as
prospective title owner, for the approval required by Section 9
of the Shipping Act, 1916, as amended (46 App. U.S.C. 808), of
the time or voyage charter(s) of either the M/V RAYNA (built in
Japan in 1981 and presently documented in Greece) or the M/V
PACIFIC PATRIOT (built in England in 1982 and presently
documented in the United Kingdom) or the M/V OAK SUN (built in
Japan in 1982 and presently documented in Liberia), which vessel
is to be documented under the laws of the United States, to the
Government of Israel or an instrumentality thereof (GOI), not a
citizen of the United States within the meaning of Section 2 of
the Shipping Act, 1916, as amended (46 App. U.S.C. 802), for the
period commencing on the date of documentation under the laws of
the United States, for the basic period of five (5) years from
said date, and the optional period of two (2) years thereafter,
for use in the worldwide transportation of grain:

IT IS ORDERED, This           day of           1986, that the
approval required by Sections 9 and 41 of the Shipping Act, 1916,
as amended (46 App. U.S.C. 808 and 839), of the time or voyage
charter(s) of one of the above identified vessels to an alien,
for the period and for operation, as above set forth, be, and it
is hereby granted, upon the following conditions:

    (1)  that said vessel shall not be subchartered to aliens
        without the prior written approval of the Maritime
        Administration, except as may be permitted by 46 CFR
        Part 221;

    (2)  that said vessel, while operating under the above
        charter, shall not be subchartered to aliens for the
        carriage of cargoes of any kind to or from Albania,
        Bulgaria, Czechoslovakia, Estonia, German Democratic
        Republic (including East Berlin), Laos, Latvia,
        Lithuania, Outer Mongolia, Union of Soviet Socialist
        Republics, North Korea, Vietnam, Kampuchea, Cuba or
        Libya, unless otherwise permitted by law;

(3)   that the engagement of the said vessel in the carriage
      of cargoes subject to the provisions of the cargo
      preference laws of the United States, including any
      side agreement to which the United States and the
      charterer may be parties or subject to, shall be
      limited to the permissible foreign-flag share,
      Provided, that the minimal fifty percent amount
      reserved to U.S.-flag vessels is being met, as
      determined by the Maritime Administration, and
      Provided, Further, that upon expiration of the
      statutory three-year period, the vessel will be fully
      eligible to participate in the 50 percent share
      reserved to U.S.-flag carriage; and

(4)   that for each year during the three-year period,
      Enterprises shall (a) inform each U.S. Government
      shipper agency of the contents of this Order and (b)
      provide quarterly reports on all cargoes carried,
      particularly noting all government-impelled cargoes.

                              ADMINISTRATOR
                              MARITIME ADMINISTRATION


                              J. C. FERNANDERS
                              Assistant Secretary
                              Maritime Administration

U. S. DEPARTMENT OF TRANSPORTATION
MARITIME ADMINISTRATION
WASHINGTON, D. C. 20590

CHARTER ORDER NO. MA-5918

Approving the Time or Voyage Charter(s) to an
Alien of either M/V RAYNA or M/V PACIFIC PATRIOT or
M/V OAK SUN or M/V PACIFIC PEACE
- - - - - - - - - - - - - -

WHEREAS, An application has been filed by King Solomon Enterprises,
Inc. (Enterprises), a Delaware corporation, as prospective title
owner, for the approval required by Section 9 of the Shipping Act,
1916, as amended (46 App. U.S.C. 808), of the time or voyage
charter(s) of either the M/V RAYNA (built in Japan in 1981 and
presently documented in Greece) or the M/V PACIFIC PATRIOT (built in
England in 1982 and presently documented in the United Kingdom) or
the M/V OAK SUN (built in Japan in 1982 and presently documented in
Liberia) or the M/V PACIFIC PEACE (built in England in 1982 and
presently documented in the United Kingdom), which vessel is to be
documented under the laws of the United States, to the Government of
Israel or an instrumentality thereof (GOI), not a citizen of the
United States within the meaning of Section 2 of the Shipping Act,
1916, as amended (46 App. U.S.C. 802), for the period commencing on
the date of documentation under the laws of the United States, for
the basic period of five (5) years from said date, and the optional
period of two (2) years thereafter, for use in the worldwide
transportation of grain:

IT IS ORDERED, This  12th   day of September, 1986, that the approval
required by Sections 9 and 41 of the Shipping Act, 1916, as amended
(46 App. U.S.C. 808 and 839), of the time or voyage charter(s) of
one of the above identified vessels to an alien, for the period and
for operation, as above set forth, be, and it is hereby granted,
upon the following conditions:

   (1) that said vessel shall not be subchartered to aliens
       without the prior written approval of the Maritime
       Administration, except as may be permitted by 46 CFR
       Part 221;

   (2) that said vessel, while operating under the above
       charter, shall not be subchartered to aliens for the
       carriage of cargoes of any kind to or from Albania,
       Bulgaria, Czechoslovakia, Estonia, German Democratic
       Republic (including East Berlin), Laos, Latvia,
       Lithuania, Outer Mongolia, Union of Soviet Socialist
       Republics, North Korea, Vietnam, Kampuchea, Cuba or
       Libya, unless otherwise permitted by law;

(3) that the engagement of the said vessel in the carriage of cargoes subject to the provisions of the cargo preference laws of the United States, including any side agreement to which the United States and the charterer may be parties or subject to, shall be limited to the permissible foreign-flag share, Provided, that the minimal fifty percent amount reserved to U.S.-flag vessels is being met, as determined by the Maritime Administration, and Provided, Further, that upon expiration of the statutory three-year period, the vessel will be fully eligible to participate in the 50 percent share reserved to U.S.-flag carriers; and

(4) that for each year during the three-year period, King Solomon Enterprises, Inc. shall (a) inform each U.S. Government shipper agency of the contents of this Order and (b) provide quarterly reports on all cargoes carried, particularly noting all government-impelled cargoes.

ADMINISTRATOR
MARITIME ADMINISTRATION

J. C. FERNANDERS
Assistant Secretary
Maritime Administration



US Department
of Transportation

**Maritime
Administration**

400 Seventh Street, S W.
Washington, D.C. 20590

DEC. 0 3 1985

FILED

FEB 26 1987

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

John W. McConnell, Jr., Esq.
Haight, Gardner, Poor & Havens
2828 Pennsyvlania Avenue, NW
Washington, DC  20007

Dear Mr. McConnell:

On September 12, 1986, I issued a conditional order (MA-5918)
relating to charter of one of three named vessels (M/V RAYNA or
M/V PACIFIC PARRIOT or M/V PACIFIC PEACE) by King Solomon
Enterprises, Inc. (Solomon) to the Government of Israel or an
instrumentality thereof (GOI).  To date, your client Solomon has
not communicated any view to me as issuing official on that
order, particularly any disagreement as to its terms.

However, the suggestion has reached members of the Maritime
Administration staff, and been conveyed to me, that Solomon
disagrees with one or more of the charter order's terms.
Further, there is an implication that Solomon may be
contemplating either a charter contrary to the terms of the
outstanding order or another chartering arrangement with GOI
without obtaining further approval under Section 9 of the
Shipping Act, 1916, as amended (46 App. U.S.C. 808).

Due to the serious nature of these suggestions, I am impelled to
present a question and several requests.  The question is whether
Solomon has any reservation relative to the terms of the
outstanding charter order which I issued.  The first request is
for a status report on the chartering plans between Solomon and
GOI, with regard to the abovenamed vessels or any other vessels.
If either of the parties is contemplating a new chartering
arrangement, I wish to be advised of it and to receive a copy.
Finally, I ask that you inform me in advance of the date of
loading of any cargo resulting from any such charter or charters,
whether or not covered by the previously issued charter order.



-2-

This letter is intended to protect the integrity of the order already issued, and the foreign transfer program generally. However, its additional purpose is to underscore the absolute need for a shipowner to adhere to the law and to avoid the severe penalties attaching to violations of Section 9.

I will appreciate receiving your response by Friday, December 12, 1986.

Sincerely,

J. C. Fernanders
Foreign Transfer Officer

M/
w

INTERNATIONAL DEVELOPMENT
WASHINGTON D.C.

B

FILED

FEB 26 1987

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

December 16, 1985

Barry Rosenblum
Assistant Director
Government of Israel
Supply Mission
350 Fifth Ave.
New York, N.Y.  10118

Dear Mr. Rosenblum:

The Israel Supply Mission (ISM) has requested AID to approve a
substitute vessel for the M/V MARINE PRINCESS.  We understand
that the MARINE PRINCESS is presently carrying grain from the
United States to Israel for ISM under a three year consecutive
voyage charter.  Because of operational problems the owners of
the MARINE PRINCESS have proposed to ISM that another U.S. flag
vessel be substituted for the duration of the charter.  The
substitute vessel was neither built in the United States nor will
have been registered as a U.S. flag vessel for three years.

AID has consistently asserted since the inception of the Cash
Transfer program that the Cargo Preference Act of 1954 does not
apply to such programs.  In 1980 the GAO confirmed AID's position
with regard to the Cash Transfer program in Israel, B-194528, 59
Comp. Gen.  279 (1980).  The same opinion further held that
statutory requirements for Isreal to maintain a specific level of
nonmilitary imports from the U.S. did not result in a
re-application of the Act.  Id at 282.

The above decision makes it clear that specific requirements of
the Cargo Preference Act of 1954 do not apply to the Cash
Transfer program in Israel.  It is also clear that the general
provisions of the Israeli side letter, including the undertakings
to maintain levels of usage of U.S.-flag ships for carriage of
bulk grains purchased for government account, do not result in
reapplication of the Act or any of its requirements.

Accordingly, neither the Cargo Preference Act of 1954 nor the
Israel side letter prevents the Israel Supply Mission from
utilizing a U.S.-flag ship, built outside the U.S. and registered

Ex9

in the U.S. for less than three years.  However, AID's approval of any substitute vessel is still subject to a determination as to whether the rate is fair and reasonable.

Sincerely,

Howard D. Cradick, Chief
Transportation Division
Office of Acquisition and
Assistance Management

cc:  L.C. Paine Jr.
     Maritime Administration

AGENCY FOR INTERNATIONAL DEVELOPMENT
WASHINGTON D C 20523

FILED

FEB 26 1987

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

March 5, 1986

Mr. Barry Rosenblum
Government of Israel Supply Mission
Empire State Building
350 Fifth Avenue
New York, N.Y.  10118

Dear Mr. Rosenblum:

This letter approves the proposed substitute vessel for the
MARINE PRINCESS, presently under a three year consecutive voyage
charter to the Israel Supply Mission (ISM).

As stipulated in the current "side letter" between ISM and the
Agency for International Development (AID), we requested the
Maritime Administration (MARAD) to calculate fair and reasonable
rates for the substitute vessel.  MARAD refused on the ground
that the substitute was not a qualified U.S. flag vessel, because
it had not been documented in the United States for at least
three years.

In our view, a U.S. flag vessel does not have to be documented in
the United States for three years in order to qualify to carry
bulk grain to Israel under the current "side letter" agreement.
We stated this position in our letter to you dated December 16,
1985.

We have reviewed the proposed substitution in the absence of fair
and reasonable rate guidance from MARAD and noted the reduction
in freight rate from the previous charter and the qualification
of the substitute vessel.  In view of the foregoing, we give our
approval to the proposed substitution.

Sincerely yours,

Howard D. Cradick, Chief
Transportation Division
Office of Acquisition and
    Assistance Management

EX.10

**AGENCY FOR INTERNATIONAL DEVELOPMENT**
WASHINGTON, D.C 20523

FILED

FEB 26 1987

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

October 15, 1986

Mr. Samuel Strauss
Director
Government of Israel
    Supply Mission
350 Fifth Avenue
New York, New York  10118

Dear Mr. Strauss:

Thank you for your letter dated September 18, 1986.  The position
stated in our December 16, 1985 letter to Barry Rosenblum of your
office has not changed.

As you are aware, the Maritime Administration (MARAD) has
expressed its disagreement with A.I.D. on this matter and has
taken certain actions in regard to applications for charter
approval under the Shipping Act of 1916.  A.I.D. has no authority
to instruct MARAD concerning the exercise of its charter approval
authority.  The Comptroller General has also stated that he lacks
jurisdiction to question the exercise of such authority.

Please let me know if you wish to discuss this further.

Sincerely yours,

Howard D. Cradick, Chief
Transportation Division
Office of Procurement

Ex. 11

09-18-86  THU  16:   KEDMA/CR/LOADSTA              P.02

SEP.18 '86 16:06 ISRAEL ECONOMIC OFFICES NY

tax# 15
Page 1 of 2



# GOVERNMENT OF ISRAEL
## SUPPLY MISSION

FILED

September 18, 1986

FEB 26 1987
CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

Howard D. Cradick, Chief
Transportation Division
Office of Acquisition and
Assistance Management
Agency for International Developement
Washington, D.C.

Dear Sir,

As you are most likely aware, subsequent to your letter to us
dated December 16, 1985, in which you set forth the position of
A.I.D. that we may utilize a U.S. flag ship built outside the U.S.
and registered in the U.S. for less than three years to satisfy
our undertaking to maintain previous levels of usage of U.S.
flag ships, the Maritime Administration denied Section 9
(Shipping Act, 1916, as amended) approval to the prospective
owners of such a vessel.

Thereafter, and upon the advice of their counsel, the prospective
owners restructured the proposed transaction so that their
shareholders would not be citizens of the U.S., and therefore,
not required to obtain Section 9 approval. A different vessel, but
one which would still be under U.S. flag for less than three years,
was named. (We attach hereto a copy of the legal opinion
concluding that the charter or other transfer of the vessel
to non-U.S. citizens is not subject to Section 9.)
Nonetheless, due to the severity of the penalties for violation
of Section 9, the prospective owners applied to the Maritime
Administration for a determination as to whether approval was
required, and if yes, for the granting of such approval.
For this purpose, the same charter which had previously been
submitted to the Maritime Administration, but rejected, was
resubmitted with the names of the parties deleted.

On September 4, 1986, the Maritime Administration found that
Section 9 approval is required, and despite its earlier decision
to the contrary, found, further, that the proposed charter
would be approved subject to several conditions.

EX. 12

SEP.18 '86 16:07 ISRAEL ECONOMIC OFFICES NY          P.02

**Page 2**

*Page 2 of 2*

However, prior to entering into a formal charter agreement with
the prospective owners, in view of their restructuring of the
proposed transaction as described above, we must ask for your
reconfirmation that the vessel to be chartered by us will still
qualify towards fulfilling our undertaking in the side letter
between us to maintain previous levels of usage of U.S. flag ships.


We look forward to your earliest response.

Very truly yours,

Shmuel Strauss
Director

**AGENCY FOR INTERNATIONAL DEVELOPMENT**
WASHINGTON, D.C 20523

FILED

FEB 2 6 1987

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

February 25, 1986

Mr. S. Thomas Romeo
Maritime Administration
Division of National Cargo (M-822)
400 Seventh Street, S.W.
Washington, D.C.  20590

Dear Mr. Romeo:

In your letter of January 24, 1986, you criticize AID's approval of the proposal by the Government of Israel Supply Mission (ISM) to use a United States flag vessel built outside the U.S. and registered here for less than three years in the carriage of cargoes in connection with AID's Cash Transfer to Israel. We do not agree with your position on this matter.

It is settled law that the Cargo Preference Act of 1954 does not apply to AID's Cash Transfer to Israel. Council of American-Flag Ship Operators v. United States, 596 F. Supp. 160 (D.D.C. 1984), aff'd without op. Civ. Action No. 84-5850 (CAD.C. January 15, 1986); Comptroller General Decision No. B-194528, 59 Comp. Gen. 279 (1980). Your letter does not dispute this point.

Consequently, your position that any U.S.-flag vessel built outside the U.S. and registered here for less than three years is ineligible for the carriage of cargoes in connection with the Cash Transfer to Israel is based solely on your interpretation of certain language contained in "side letters" submitted by the Government of Israel to AID. These "side letters" contain a number of assurances by the Government of Israel. You specifically rely on the 1978 "side letter" which states that:

> "Regarding the carriage of goods imported from the United States, my government will continue to follow present procedures for bulk shipments of grain on dry bulk carriers. As you know, these procedures were worked out with A.I.D. and the Maritime Administration with a view toward assuring a fair share of the market for American carriers."

Subsequent "side letters" contain similar language referring to agreed "procedures" for dry bulk grain shipments. You contend that the "procedures" incorporate all requirements of the Cargo Preference Act of 1954, including the three-year minimum rule.

We have reviewed our files and discussed the matter with the ISM.  Our files contain memoranda reflecting the details of the

Mr. S. Thomas Romeo

- 2 -

agreed procedures but make no mention of an intent to incorporate all the requirements of the Cargo Preference Act of 1954 or the specific three-year rule.  Our staff has no knowledge of any agreement by either AID or ISM to the imposition of such requirements.  The ISM has stated to us verbally and confirmed in writing that it is equally unaware of any agreement to this effect.

Accordingly, AID has no basis to withdraw its approval of the ISM proposal to utilize a U.S.-flag vessel built outside the U.S. and registered here for less than three years.  We will continue to work with the Government of Israel and the ISM to achieve full compliance with all the assurances contained in the applicable "side letters", including the "procedures" agreed among AID, MARAD, and the ISM.

AID is disturbed that your letter threatens to advise Congress that any U.S.-flag tonnage moving pursuant to the ISM plan is foreign-flag tonnage.  If MARAD decides to do so, we request that you inform AID and the ISM at the earliest possible time and also inform the Congress of AID's strong objection, as well as the views of the ISM on the matter.

Sincerely yours,

Howard D. Cradick, Chief
Transportation Division
Office of Acquisition and
Assistance Management

cc:  Gary S. Misch, MARAD
     Barry Rosenblum, ISM

01-28-87 WED 16:56 KEDMA/CR/LOADSTN                           P.02

SENT BY:a            : 1-28-87  1:55PM ;          5648964→        212509420:1;# 1



## GOVERNMENT OF ISRAEL
### SUPPLY MISSION

**FILED**

**FEB 26 1987**

January 28th, 1987   COURT
DISTRICT OF COLUMBIA

King Solomon Enterprises, Inc.,
33 Broadway,
Suit 1901
New York, N.Y. 10006


Attn: Mr. Livanos


Re: Negotiation for consecutive voyage charter between
    King Solomon Enterprises, Inc., and the Government of
    Israel Supply Mission.


Gentelmen,


Reference is made to our ongoing telephone discussions during
which you have advised us that you continue to face legal and
other obstacles in connection with resolving the question of
any required approval and,thus, the aquisition of a suitable
vessel.

In view of this state of affairs, we must inform you that we are
now in the advance stages of negotiating the charter of a vessel
with another company.If we are able to successfully conclude these
negotiations, we regret to advise that we will no longer have any
need for a vessel from you , and no further efforts by you in
connection with resolving such question or aquiring a vessel will
be required.


                                    Sincerely yours,


                                    S. Strauss
                                    Director
                                    Government of Israel Supply Mission


Ex.14